Good afternoon, your honors. My name is David Schlesinger. I'm appearing on behalf of Appellant Antonio Rene Martinez. By audio only, regrettably, because for whatever reason today, my laptop camera is not operating. So I'll try to speak up as best I can. The essence of this appeal is that the district court committed multiple plain errors by deviating significantly from the prescribed admonitions and advisals that Rule 11B1, B2, and B3 of the Federal Rules of Criminal Procedure require. They are mandatory. And in our estimation, at least three of those plain errors affected Mr. Martinez's substantial rights, such that there is a reasonable probability that but for those errors, he would not have decided to change his plea and plead guilty to the 1326 violation that had been charged in the indictment. Now, the first of those errors, and one that we deem incredibly significant in light of this court's recent opinion in Fuentes-Galvez, is that the district court did not ask Mr. Martinez whether anyone had made any promises to him. This is in reference to Rule 11B2, to induce him to plead guilty. That's very significant within the context of this case, given the well-developed record from the Section 2255 proceedings that illustrate that Mr. Martinez believed that his sentencing counsel, Kevin Little, had essentially promised him that he would receive a term of no more than 24 months if he were to plead guilty. There is, indeed, evidence in the record that illustrates precisely why Mr. Martinez may have thought that he was only going to get a 24-month sentence. I'm referring to pages ER-159 and ER-179, which evidence negotiations between Mr. Little and the government's AUSA in charge of sentencing, Vincenzo Rabin. The 24 months derives from an attempt by Mr. Little to try to get the government to agree that Mr. Martinez's sentence should be reduced because his state court Section 288A conviction had recently been vacated. And that conviction had been an enhancing prior when he was sentenced on a separate Section 245A1 charge in 2001. So for that reason, we think that it is significant that the district court did not ask him about promises. It's clear that Mr. Martinez had a subjective understanding that he was not to be sentenced to a term exceeding 24 months. What is the status of the ineffective assistance part of the 2255? The ineffective assistance claim, Your Honor, was rejected by the district court on appeal to this court. The government entered into a joint stipulation with... I'm asking the question. So it went back. What we have now is a direct appeal. That's correct, Your Honor. It's a direct appeal from... The rest of the 2255, is it sitting in abeyance? What is it doing? Is it being redone? What's its status? It's an interesting question, Your Honor, because it never actually was finally adjudicated by this court. The district court had not issued a certificate of appealability for anything other than Mr. Martinez's claim that Mr. Little had failed to file, as instructed, a notice of appeal in the district court. So, it's my understanding that the parties then fixated on that before this court and ultimately came up with a settlement that allowed for, and this court approved it by remanding to the district court, that allowed for the district court to reissue the judgment and commitment and therefore give Mr. Martinez an opportunity to prosecute a direct appeal that he never had. I understand that, but when you talk about this case, it sounds much more like an ineffective assistance case than anything else. And that's why I want to know whether the ineffective assistance issue is still open. Or is it dead as of now? I can't tell that. I think, candidly, Your Honor, it's unclear simply because the district court had not issued a certificate of appealability regarding anything other than the failure... But you could have briefed, under our rules, you can brief it nonetheless, and the court can decide whether to issue a certificate of appealability on it. So, I'm just a little baffled about where we are on that, and it seems important to me. All right, well, you don't know the answer, so... Well, Your Honor, with the court's indulgence, I might be prepared to submit a letter after reviewing the opening brief that federal defenders had filed in the 2255 appeal. I am curious to see whether they actually did seek to litigate that particular issue, and perhaps I could also follow up with federal defenders regarding that point. So, if the court were prepared to issue an order regarding any type of... Well, we can, in this direct appeal, rely on the record of the 2255 with regard to the promises. It belongs over there, and if this were a regular direct appeal, we wouldn't even know about it, right? Obviously, Your Honor, I understand your concern that there is some procedural intricacy here. I would be happy to file a supplemental briefing or a Rule 28 Jake equivalent letter to try to clarify this issue. What do we do with the record? I mean, with respect to any findings that were made on the 2255 that were later essentially vacated, I guess, do they sort of disappear? I mean, are we supposed to consider that on the direct appeal? Your Honor, I think to the extent that the court wishes to consider any of the findings, they don't actually bear on Mr. Martinez's subjective understanding. Isn't there some disputed evidence about his expectation and the alleged promise of less than 24 months? I thought his attorney said nothing like that was said. Your Honor is correct that the district court did make findings to that effect. What I'm arguing is that notwithstanding what the district court may have seen from an objective perspective, this court for Rule 11 purposes, substantial rights perspectives, new prong three of Dominguez Benitez and Monzone should focus on what Mr. Martinez was thinking as of August 29th, 2016, regarding his sentencing expectations and his opportunity to engage in post collateral. It is developed in the 2255 record, Your Honor. That is correct. His subjective understanding is developed through his pro se pleadings and evidence that federal defenders offered in support of that motion. I see that my time is up. Can I ask Mr. Schlesinger, I have a factual question. Certainly, Your Honor. Were Mr. Martinez's state convictions ultimately expunged or vacated? The Section 288A conviction was vacated, Your Honor. The Section 245A1 conviction was not. The Superior Court denied his motion to vacate for lack of a Section 1016.5 advisal. Do you know if that affected his immigration status? The Section 245A1 conviction has a profound effect on his immigration status, Your Honor, because it is categorically not only an aggravated felony, but also a crime involving moral turpitude. So, I notice that my time is coming to a close. If there are no further questions from the court, I would like to reserve some time for rebuttal. All right. Thank you, counsel. Ms. Ellsworth. Good afternoon, Your Honors, and may it please the court, Melanie Ellsworth, appearing on behalf of the United States. Your Honors, I'd like to dive right into the third problem of the reasonable probability, sorry, the Plain Error Review Standard. And I'd like to address whether there was actually a reasonable probability that any of the Rule 11 errors would have affected the defendants' substantial rights. Let me just say what bothers me. Rule 11 is a bunch of prophylactic rules which were set up to avoid us having to decide whether there was actually a voluntary clear. And I understand that case law has a prejudiced prong, particularly in the Plain Error. But this really wasn't excruciating. And if we now take each piece of this, and our case law may require it, but it doesn't make a lot of sense, because at some point, it appears to me that it makes more sense to tell the district judges, just do it the way it's written, and we won't have to do this all the time. So what are we supposed to do when we have this many different quarter-cutting devices? I certainly understand the court's concerns, and several responses on that front, Your Honor. First, as you pointed out, there is the Plain Error review standard. And that is because the defendant also has a burden when he's in court to make any objections to the Rule 11 colloquy, and that didn't happen here. And, you know, for what it's worth... But there's no incentive. I mean, it's the U.S. Attorney that really should be saying, excuse me, Judge, but you're not doing this right. But there's no incentive to do it. I understand, Your Honor. And in retrospect, the government would have handled this change of plea colloquy much differently. But the fact is, we are here now, and the defendant didn't make any objections during this colloquy, and ended up entering a change of plea during the same hearing. And therefore, we are faced with the Plain Error standard of review. Segwaying back to whether or not any of these errors could have affected the defendant's substantial rights, the answer in this case has to be that there was no effect on his substantial rights. And you can see this in several different places in the record. I think, first, the clearest indication we see this is in Excerpt of Record 72. And this is a letter that the defendant sent to the court after his change of plea and after his sentencing, which occurred during the same hearing. And in this letter, the defendant writes, This is significant, because he's asking for a quicker deportation, and he asked for a better deal. He doesn't say he wants trial. The second place we see this is actually at the beginning of the Rule 11 colloquy, when the judge questions him about his resolve in entering a guilty plea without a plea agreement from the government. So clearly, there's an understanding that there were no promises made for the government. The defendant acknowledged he understood this, and he confirms that he wants to change his plea of guilty. This is found in Excerpts of Record, page 3, lines 15 through 20. And even looking before the Rule 11 colloquy, we have several instances of status conferences where the defense attorney appears before the district judge and basically explains the strategy that's happening. The strategy is that the defendant is making efforts to have his state court conviction set aside, and so his defense attorney is buying time in the federal case to see whether or not that happens, because that could affect the outcome of the federal case. The first instance we see of this is at Excerpts of Record, page 57, lines 11 through 18, where the defense attorney is asking for a continuance of the hearing. And he notes that there is an upcoming hearing in the state court case. He gives a date of April 25th, and he says to the court, I would ask that this case be continued for purposes of a change of plea until after that hearing date. We next see this again at Excerpts of Record, page 65. And here, the defense attorney is again asking for another continuance in the case. He says, I fully expect we can enter a plea at the next hearing. That's at lines 17 through 19. Your Honor, this was an immigration case. It's not uncommon for that to happen in these instances. This was also a case where, I believe, from the time the defendant was arraigned in the Eastern District, the case had drug on for about 10 or 11 months. And that, again, is quite a long time for an immigration case. But typically, you do see the plea and sentencing on the same day. So it wasn't uncommon. This was a guideline, low-end guideline, since 41 months? That's correct, Your Honor. It was. So why wouldn't? I mean, what did the defendant gain by an open plea? I mean, I understand why not accepting the other plea offers, which would have required him to waive some of his appellate rights. But what's to be gained from an open plea? Doesn't that suggest that at least reasonable probability he would have gone to trial? Well, Your Honor, what… I'm sorry. Would you ask your question one more time? Well, I guess given that an open plea, in fact, did lead to a guideline sentence, what would have been the downside for Mr. Martinez to go to trial and not to leave? Sure, Your Honor. I think the answer can be found at Excerpts of Record 384 to 385. And this was actually testimony that was given by the defendant's attorney during the 2255 evidentiary hearing. And Mr. Little explained to the court a couple of things about defense strategy. And one was that he had discussed with the defendant that there was no valid reason to attack the underlying deportation order at trial. He explained that the defendant upon his arrest had admitted to all of the elements of the crime and that the best option essentially was to enter a plea and retain his appellate rights, including his right to collaboratively attack any sentence in a 2255 proceeding. Counsel, may I interject? Counsel, I'd like to interject there. I just want to be clear that the only reason there was that waiver of appellate rights and of a collateral attack was because that's what the government wanted in exchange for the fast-track plea. So that was a provision in the proposed plea agreement, correct? That's correct. It was a provision in the first plea agreement, Your Honor, that he waived appellate rights and his collateral attack rights. But that, in fact, didn't happen in this case, as we know, because the defendant didn't sign a plea agreement with the government. And the other, going back to your question, Judge Chin, the other thing I would add to that is that by going to trial, the defendant would also lose an extra point for acceptance of responsibility, which would increase his sentence. One point or three points? A benefit to him. Wouldn't he have gained, did he not gain three points by entering a plea? He did, yes. From a 24 to a 21, right? That's correct. So he did, there was something to be gained by not going to trial. By not going to trial, yes. And there was evidence, I believe, it's true, it's not disputed, that he did review the PSR. I know there's an issue about the colloquy, but as I recall, the evidence was that he did go over it with his attorney. That's correct, Your Honor, and I believe that's found in excerpts of record 321, where the attorney is explaining that he discussed the guidelines with him, that he had a printout, that he had shown the defendant prior to one of the status conference hearings, that showed a range under the sentencing guidelines. I think the attorney explained that it was also a fast-track case, and that a plea pre-report had already been done even before that date, and the court made credibility findings actually crediting the defense attorney's testimony on this front. And had he gone to trial and not gotten the three points in a level 24 criminal history category 2, the range would have been 57 to 71, according to my calculations. Does that sound about right? That's correct, Your Honor. So he saved 16 months, at least in terms of guideline range, by plea. That sounds accurate, yes. All right, we are time is up, counsel, and I think Mr. Sessinger had about half a minute left. Thank you, Your Honor. I would like to briefly address a question that Judge Berzon had about the significance of an immediate sentencing proceeding. The fact that the district court was so prepared to segue immediately to sentencing makes the failure to advise under Rule 11B1M regarding the guidelines, regarding Section 3553A, even more egregious, because if he had so done, he might have been prepared to give even more specifics. It might have been typical of a standard change of plea proceeding, in which a PSR had not even been prepared. If he had a prepared PSR, there could have been much more specific information that could have dissuaded Mr. Martinez from deciding to plead guilty if he had been aware that there was a chance that he was not going to get his expected 24-month term. Was the immediate sentence at the request of the defense, or did the defense object to it? It was not at the request of the defense, but conceivably, Your Honor, Mr. Little, his sentencing counsel did not object to it. It was the district court's suggestion. Neither Mr. Little nor AUSA Rabbin objected to it. But we think that it heightens the plain error for the reasons that I just explained. If there are no further questions, I'd be prepared to submit. All right. Thank you, counsel. United States v. Martinez is submitted.
judges: Wardlaw, Berzon, Chen